**Francis J. GRALING and Margaret H. Graling, Plaintiffs,**

**v.**

**Thomas J. REILLY and Amy M. Reilly, Defendants.**

Civ. A. No. 2198-60.

United States District Court
District of Columbia.

Feb. 14, 1963.

---

James C. McKay, Washington, D. C., for plaintiffs.

Francis L. Casey, Jr., Washington, D. C,. for defendants.

HOLTZOFF, District Judge.

This is an action by a husband and wife for personal injuries sustained by the wife. A verdict was rendered in favor of the wife for $40,000 and in favor of the husband for $15,000, which included the medical, hospital, and other expenses incurred by him on his wife's account, as well as compensation for loss of services and companionship. The case is now before the Court on a motion by the defendants for a new trial on the sole ground that the verdict is excessive.

At the outset, it must be observed that the Court may not substitute its own judgment as to the amount of damages for the judgment of the jury. The question is not whether the Court would have awarded a smaller sum than was awarded by the jury. The question is not whether the size of the verdict was merely too great. It is whether the verdict was brought about by passion and prejudice; whether it is so exorbitant as to shock the conscience of the Court; and even whether it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.

Since the trial of this case, the Court has given a great deal of thought to this matter, because it assumed that in view of the high awards of the jury, a motion such as is now before the Court would probably be made. The Court has read and considered carefully the motion and the memoranda submitted in this connection and heard the oral arguments of able counsel. The Court has reached the conclusion that it should not disturb the verdict of the jury. It is a serious matter to set aside the verdict of a jury. It should not be done except under unusual or exceptional circumstances. This is not such a case.

In view of the size of the verdict, however, and the somewhat unique nature of the case, the Court feels that counsel are entitled to know its reasoning in reaching its conclusion; and accordingly will state its views with some degree of particularity. First, the nature of the case should be noted. The defendants, also husband and wife, were driving an automobile on 17th Street near I Street in downtown Washington, at about noon. The husband was at the wheel. They decided that he would leave the car in order to attend to some private business and that the wife would take over the driving and proceed to another destination. The husband stopped the car. He left the engine running and, in addition, he failed to shift the transmission into neutral. The transmission remained in gear. He started to leave the driver's seat and his wife began to move from the passenger's to the driver's place. As she did so, she accidentally hit the accelerator and the car surged forward. The car then hit the rear of a standing taxicab, which was awaiting a change of traffic lights. The defendants' car then ricocheted, hit a bus sign on the sidewalk, then struck a traffic sign, and finally bounced into a tree, with such force that the tree toppled over. The female plaintiff was standing near the tree waiting for a bus. She was hit by the tree and knocked down. Her thigh was cut by a branch of the tree so severely as to sever an artery. She was bleeding profusely.[1]

---

1. At the beginning of the trial, counsel for the defendants, with commendable candor, conceded negligence. Liability was contested, however, on the ground that the result was not foreseeable, on the theory of the celebrated case of Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253. In his closing argument to the jury, however, counsel for the defendants conceded liability, pos-

Fortunately, a truck of the Chesapeake and Potomac Telephone Company was parked in the neighborhood. One of the members of the Telephone Company crew, Robert A. Daly, whose title was "cable splicer's helper", was eating his lunch on the bench in a park located across the street from the corner where the accident occurred. He heard the crash and saw the tree falling. He ran to the scene and saw that Mrs. Graling, the female plaintiff, was lying on the street in a pool of blood. Apparently, the Telephone Company equips its trucks with first-aid kits and gives its employees training in using them. Mr. Daly had the presence of mind and resourcefulness to run back to the truck, get his first-aid kit, return to the scene of the accident, pull out an appropriate bandage, administer it properly, and thereby check the bleeding. The building on the corner was a medical building. A physician, Dr. William R. Strong, who had an office there, heard that an accident had occurred and came out to see if he could be of assistance. He testified that he saw a large laceration inside Mrs. Graling's thigh, that she was bleeding profusely, and that the Telephone Company employee was successfully administering first aid. The doctor added that he, the doctor, "assisted" him.

■ Mrs. Graling was removed in an ambulance to Georgetown University Hospital. It may well be that if Mr. Daly had not been at hand, had not administered first aid and checked the bleeding, the accident might have eventuated much more disastrously than it did and possibly Mrs. Graling might have bled to death. It was argued cogently and properly by counsel for the defendants at the trial that damages may be awarded only for what actually did happen and not for what might have taken place. On the other hand, subsequent contemplation of what might have occurred may aggravate the mental anguish that accompanies pain and suffering, of which there was a great deal in this case.

Fortunately again for Mrs. Graling, when she arrived at the hospital there was available an outstanding vascular surgeon, Dr. Charles Hufnagel, who performed an operation in order to repair the ruptured artery. He used a part of a vein of the thigh in order to bridge the gap in the artery. He described this operation in his testimony as "vein grafting". In connection with her treatment, it was necessary to administer to her large doses of antibotics. She remained in the hospital on this occasion about fifteen days and then was taken home. Some weeks later she suffered from a very distressing and serious reaction due to the antibiotics. A little over a year later, she was required to return to the hospital and a second operation on her leg was performed followed by a third operation. On that occasion she remained in the hospital several weeks.

■ There are two aspects of the case that have to be considered in connection with the damages sustained by the female plaintiff: first, the pain and suffering and mental anguish, which obviously were very considerable; and, second, and perhaps even more important, the permanent injuries resulting from this accident. In the first place, she is going through the rest of her life with a repaired artery. The doctor testified that it gives her adequate circulation, but that there is some impairment, which is likely to cause distress and swelling from time to time. She has a permanent deep scar or depression that appears as though it was gouged out of the muscles of her leg. Her daily activities have been greatly affected and curtailed because she cannot stand or walk, or even sit in one place, for a continued length of time. She had been in the habit of frequently

sibly because of the statement of the Court of Appeals for this Circuit in Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 61, 183 F.2d 811, 23 A.L.R.2d 1366, that—"it makes no difference whether or not that particular result was foreseeable". Consequently the case was submitted to the jury solely on the issue of the amount of damages.

accompanying her husband on fishing trips to Canada. She can no longer do so. She and her husband had been accustomed to taking short motor trips together, either around the City or in its environs, her husband being a retired colonel of the United States Army and having a considerable amount of time to devote to recreational activities of this kind. She can no longer participate in such trips. She can no longer go to the theater, because she cannot sit in one seat long enough without suffering distress. Such are some, though by no means all, of the principal effects of the permanent injuries that she sustained. The Court cannot properly say that the award of $40,000 was so exorbitant as to shock the conscience or even that it was beyond all reason and in excess of the maximum limit of a reasonable range.

■ As to the husband's damages, the sum of $15,000 was awarded to him. Of this amount approximately $6,500 constituted medical, hospital, and other expenses incurred by him on his wife's account. Consequently, compensation for loss of services and companionship was about $8,500. It appeared that after the accident, the wife was unable to carry on all of her household duties to the extent to which she had done theretofore. For example, instead of cooking dinner at home, the couple found it necessary frequently to eat in restaurants. This was the least of the effects on the husband. Colonel Graling and Mrs. Graling were a very closely knit couple. Their children had grown and had homes of their own. The Colonel had retired from service in the Army. He and his wife spent most of their time together and were interested in similar recreations. As mentioned previously, they used to take trips to Canada on which they both engaged in fishing. They frequently took motor trips. They attended social affairs. All of this now is impossible. The husband has lost the companionship of his wife in these respects. Both of them have had to readjust their daily lives. Under the circumstances, the Court cannot say that compensation of $8,500 is so excessive as to shock the conscience.

Necessarily every case must stand on its own feet and too much help cannot be derived from other similar decisions. There is a very similar case, however, to which attention may be called, which was tried under the Federal Tort Claims Act before the court without a jury, Redding v. United States, 196 F.Supp. 871, in the United States District Court for the Western District of Arkansas, before Judge John E. Miller. In that case, the wife had sustained very serious injuries. The husband was awarded the sum of $10,000 for loss of services and companionship. It appeared that the wife was no longer able to perform household tasks and that the husband had to take over some of her duties; and, in addition, there was a loss of companionship. There were no medical or hospital expenses in that case and, consequently, the award of $10,000 for the husband was solely for loss of services and companionship.

There is a somewhat similar case in a State Court in Missouri, Wise v. St. Louis Public Service Co., Mo.App., 349 S.W.2d 406, in which an award of $7,000 to the husband for loss of his wife's services and companionship was sustained by the court. In that instance also, the wife was no longer able to perform household tasks as a result of her injuries. To be sure, the award in the case at bar is somewhat larger than juries in the District of Columbia ordinarily give for a husband's claim for loss of consortium, but we are confronted here with an unusual case.

■ Finally, it should be noted that there is no evidence of any passion or prejudice on the part of the jury. The case was tried by able counsel on a very high level, without any attempt at undue eloquence or histrionics. All the witnesses, including the two plaintiffs, gave their testimony in a calm, deliberate

fashion, without any manifest attempt at dramatization, exaggeration or painting the situation in lurid colors.

In view of all of these considerations, the motion for a new trial is denied.