**KARMA CONSTRUCTION CO., INC., A District of Columbia Corp., Appellant,**

v.

**Charles F. KING, Jr., Appellee.**

**No. 6246.**

District of Columbia Court of Appeals.

Argued June 5, 1972.

Decided Nov. 10, 1972.

M. Michael Cramer, Washington, D. C., with whom Paul H. Weinstein and Laurence Levitan, Chevy Chase, Md., were on the brief, for appellant.

Jeremiah D. Griesemer for appellee.

Before KELLY and FICKLING, Associate Judges, and HOOD, Chief Judge, Retired.

PER CURIAM:

Appellant, Karma Construction Company (Karma), was awarded a contract for the remodeling and modernization of a toilet room and fixtures on the fourth floor of a building at the Washington Navy Yard. Karma sublet a portion of the work to appellee King. The work so sublet included the removal of two steam radiators and installation of new ones. King removed the old radiators early in August in order that other work by Karma could proceed. Due to delays, for which apparently neither Karma nor King was responsible, King was not permitted to promptly install the new radiators and as a result they had not been installed by September 17.

On the evening of September 17 or the early morning of the 18th someone turned on the steam valve, located outside the building, controlling the steam system to which the radiators had been attached.[1] As King

1. There was no direct testimony concerning the identity of the person who turned on the steam valve or the purpose of turning it on, but both parties appear to have

assumed it was turned on by a Navy building maintenance crew doing a routine inspection. King testified the valve was turned on "at 1:00 o'clock in the

had failed to cap or plug the steam pipes when he removed the radiators, steam from the open pipes damaged the walls and the ceiling of the room. Karma was required to repair the damage. The reasonable cost of the repairs, as found by the trial court, was $2,376.25, and the present action was brought by Karma to recover that sum from King.

At trial King admitted that after he removed the old radiators the steam pipes were left open by him, that the pipes could have been capped or plugged, and that obviously if the steam was turned on it would have escaped into the room. His failure to cap the pipes, he testified, was due to the fact that he did not anticipate that steam would be turned on in August, that he was prepared to promptly install the new radiators but was prevented from doing so by no fault of his.

Karma's president testified that although he and his employees were working in the room, he never noticed that the steam pipes were not capped. He admitted that during the progress of the work his foreman directed King to cap certain uncapped water pipes.

The trial court found that King was negligent, that failure to cap by one of King's experience, regardless of the season or temperature, was negligence and that such negligence was the proximate cause of the damage. However, the court found that with the open steam pipes in plain view, the hazard of escaping steam was, or should have been, apparent to Karma and its workmen, and that Karma was contributorily negligent in permitting the open pipes to

remain uncapped. Accordingly, the trial court denied Karma recovery.

The findings of negligence and contributory negligence have substantial support in the record, and we must accept them. Karma correctly argues that it was not bound to anticipate negligence on the part of King,[2] but King's failure to cap the pipes resulted in a condition which Karma's employees knew or should have known was dangerous. The record makes it clear that Karma's men, including its president and a foreman, were working in the area of the uncapped pipes for several weeks after the radiators were removed by King, and in the exercise of reasonable care should have observed the open pipes and realized the danger presented by them.

The only question here presented, as we see it, is whether contributory negligence is a valid defense to Karma's claim. As a general rule, contributory negligence is a good defense to an action based on negligence, and Karma's claim is essentially one for damages resulting from King's negligence. Karma is not suing for breach of contract on account of defective workmanship which produced an unfinished or improperly finished job. Karma's claim is that King in performance of his work did a negligent act which resulted in damages to Karma. We see no reason why Karma's contributory negligence should not defeat his claim for negligence. *See* Klein v. Dougherty, 200 Md. 22, 87 A.2d 821 (1952), where the defense of contributory negligence was recognized but held inapplicable on the facts.

Affirmed.

morning and ran wild until 8:00 o'clock in the morning." Obviously, he obtained this information from someone after the damage was discovered.

2. Northwest Airlines v. Glenn L. Martin Company, 224 F.2d 120 (6th Cir. 1955).