Jack **JEFFRIES**

v.

**POTOMAC DEVELOPMENT CORPORATION, Appellant,**

v.

**ERWIN F. SIMON & ASSOCIATES and Thomas L. Watson, Third-Party Defendants.** :

No. 86–5357.

United States Court of Appeals, District of Columbia Circuit.

Argued May 1, 1987.

Decided June 26, 1987.

James C. Gregg, with whom D'Ana E. Johnson, Washington, D.C., were on the brief for appellant.

Patrick M. Regan, with whom Joseph H. Koonz, Jr., Roger C. Johnson and Carolyn McKenney, Washington, D.C., were on the brief for appellee.

Charles E. Gallagher, Jr., Upper Marlboro, Md., with whom James M. Heffler, Washington, D.C., was on the brief for third-party defendants.

Before HARRY T. EDWARDS and SILBERMAN, Circuit Judges, and PARKER,* Senior District Judge of the United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Opinion concurring in part and dissenting in part filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

The instant appeal arises out of a negligence suit brought by the plaintiff-appellee, Jack Jeffries, against the defendant-appellant, the Potomac Development Corporation ("Potomac"). At all times relevant to this appeal, Potomac was the general contractor on a construction project in the District of Columbia. Jeffries sued Potomac to recover for injuries to his ankle and shoulder suffered while visiting the construction site to inquire about future employment. Potomac in turn filed a third-party complaint against two of its subcontractors, Erwin F. Simon and Associates and Thomas L. Watson ("third-party defendants"). After the presentation of Potomac's evidence, the trial judge dismissed the third-party complaint. However, the trial judge submitted Jeffries' negligence claim to the jury, which returned a verdict of $400,000 in favor of Jeffries.

Potomac filed a post-trial motion seeking, in the alternative, judgment notwithstanding the verdict ("JNOV"), a new trial, or a reduction in the damages awarded by the jury ("remittitur"). In support of its request for JNOV, Potomac argued that Jeffries had been contributorily negligent as a matter of law. In support of its request for a new trial, Potomac alleged that the trial judge had erred in (1) allowing Jeffries to introduce evidence that Potomac had violated federal and District of Columbia safety regulations; (2) removing from the jury the issue of Jeffries' status on the construction site (*i.e.,* whether Jeffries was a licensee or a trespasser); and (3) dismissing Potomac's third-party complaint without submitting the issue of the subcontractors' negligence to the jury. Finally, in support of its request for remittitur, Potomac argued that the $400,000 jury verdict overcompensated Jeffries for his injuries. The trial judge denied Potomac's motion in all respects, thereby leaving intact both the jury verdict and the dismissal of Potomac's third-party complaint. *See Jeffries v. Potomac Dev. Corp.,* No. 84–0720, slip op. (D.D.C. May 2, 1986), *reprinted in* Appendix of Appellant ("App.") at AA. Potomac has appealed from the judgments rendered against it, asserting the identical arguments raised in its post-trial motion. Because we find that the trial judge carefully considered and weighed the issues presented and correctly applied the law and because we find none of the arguments advanced by Potomac to be meritorious, we deny its appeal.

## I. BACKGROUND

The plaintiff-appellee, Jack Jeffries, is a resident of Virginia with over thirty years

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

of experience in the construction trade. In October of 1983, Jeffries was laid off from his job as a cement finisher. Shortly thereafter, he was told by a worker on Potomac's construction project that work might be available at the construction site, and that he might want to stop by the site to inquire about the possibility of being hired. Jeffries did so on Saturday, October 14.

When Jeffries arrived at the construction site, he found that the front entrance was locked. He proceeded to the rear entrance, which was unlocked. At the unlocked gate, he encountered two men sitting on a sandpile. He asked the men whether anyone was working on the partially-completed building that day, and was directed to the third floor of the building.

Jeffries entered the building and proceeded to an interior stairwell. According to Jeffries' own testimony, the stairwell area was "real dark." Trial Transcript ("Tr.") at 361. However, despite the darkness, Jeffries was able to discern the presence of steps and railings. There were no barricades in front of the stairwell, nor were there signs posted warning of any potential hazards.

Intending to climb the steps to the third floor, Jeffries reached out his hand for one of the stairway railings. However, Jeffries was unable to see in the darkness that the stairwell was unfinished, with no landing yet constructed at the base of the stairs. Jeffries fell through the unfinished portion of the building and landed in the basement, suffering permanent injuries to his ankle and shoulder.

Jeffries filed a negligence action against Potomac—the general contractor on the project—and requested a jury trial. Potomac, in turn, filed a third-party complaint against two of its subcontractors, alleging that employees of the subcontractors had been responsible for removing barricades from in front of the stairwell. Potomac did not request a jury trial on its third-party claims. However, at the trial judge's suggestion, the parties agreed that Potomac's claims would be submitted to the jury for a non-binding advisory verdict.

At the close of Potomac's case against the third-party defendants, the trial judge dismissed Potomac's complaint pursuant to FED.R.CIV.P. 41(b).[1] The trial judge submitted Jeffries' negligence claim to the jury, which returned a verdict in favor of Jeffries for $400,000. Potomac challenged both the dismissal and the jury verdict in a post-trial motion, requesting, in the alternative, JNOV, a new trial, or remittitur. The trial judge denied Potomac's motion in all respects, and this appeal followed.

## II. ANALYSIS

The instant case was brought in federal court based on diversity of citizenship, 28 U.S.C. § 1332 (1982), and was tried in accordance with the substantive law of the District of Columbia and the Federal Rules of Civil Procedure. Absent objection by the parties, we proceed on the assumption that the trial court chose the correct substantive law to apply. *See Romero v. National Rifle Ass'n of Am.*, 749 F.2d 77, 79 (D.C. Cir.1984); *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 114 n. 11 (D.C. Cir.1982). Based on the substantive law of the District of Columbia, and the pertinent federal procedural rules, we conclude that Potomac is not entitled to JNOV, a new trial, or remittitur. Accordingly, we deny its appeal.

### A. *Contributory Negligence*

■ The argument pressed most forcefully by Potomac on appeal is that judgment must be entered in its favor notwithstanding the adverse jury verdict, because Jeffries was contributorily negligent as a matter of law. Under District of Columbia

1. Rule 41(b) provides, in relevant part:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

law, contributory negligence is a complete bar to recovery. *Wingfield v. Peoples Drug Store,* 379 A.2d 685, 687 (D.C.1977).

Potomac's argument rests almost exclusively on the darkness that prevailed in the stairwell at the time of Jeffries' aborted climb to the third floor. In Potomac's view, a reasonably prudent person in Jeffries' position would not have attempted to climb an unfamiliar staircase without sufficient lighting to ensure his or her safety. *See Stager v. Schneider,* 494 A.2d 1307, 1311 (D.C.1985) ("Contributory negligence is the failure to act with the prudence demanded of an ordinary reasonable person under like circumstances."). Having chosen to flout potential danger, Potomac argues, Jeffries must accept the consequences of his actions.

We cannot agree with Potomac that Jeffries must be found, *as a matter of law,* to have been contributorily negligent. The District of Columbia Court of Appeals has made it abundantly clear that contributory negligence is almost always a question of fact for the jury. *See Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979). It is only in the "unusual" or "extraordinary" case that a court would be justified in removing the question of contributory negligence from the jury. *See id.; Chavis v. Commercial Storage, Inc.,* 324 A.2d 695, 699 (D.C.1974); *cf. Oxendine v. Merrell Dow Pharmaceuticals,* 506 A.2d 1100, 1103 (D.C.1986) ("A judgment notwithstanding the verdict is proper only in 'extreme' cases, in which no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party.") (quoting *District of Columbia v. Cooper,* 445 A.2d 652, 655 (D.C.1982) (en banc)). In the instant case, the question of contributory negligence was submitted to the jury, and the jury found that, under the totality of the circumstances, Jeffries had not been contributorily negligent. We do not find this to be one of those "unusual" or "extraordinary" cases in which we are compelled as a matter of law to reverse the jury's determination.

Despite the fact that Jeffries chose to proceed in the face of darkness, there is substantial evidence in the record from which a rational jury could have concluded that Jeffries acted reasonably under the circumstances. The uncontroverted evidence at trial showed that Jeffries was directed to the third floor, that he was able to discern the presence of steps and railings in the darkness, and that no other means of access to the third floor was in view. Under these circumstances, a reasonable person could well have concluded that the stairwell was a safe means of access to the third floor. Moreover, as we discuss in the next section, uncontroverted evidence at trial also established that Potomac was obligated by safety regulations to place barricades in front of unfinished stairwells. As a thirty-year veteran of the construction industry, Jeffries could reasonably have inferred from the absence of barricades that the stairwell had been completed.

Completely ignoring this confluence of circumstances, Potomac vigorously maintains that the darkness that prevailed in the stairwell at the time of the accident was sufficient, *in and of itself,* to preclude a jury finding that Jeffries acted reasonably in attempting to climb the steps to the third floor. In short, Potomac argues for something akin to a *per se* rule that he who chooses to proceed in darkness is negligent as a matter of law. In support of this novel proposition, Potomac cites *Roberts v. United States,* 514 F.Supp. 712 (D.D.C. 1981), in which the trial court found that a plaintiff who was injured while proceeding in almost complete darkness was contributorily negligent. However, even assuming that *Roberts* is relevant to the instant case,[2] it plainly does not compel the conclusion that Jeffries' decision to proceed in the darkness constituted contributory negligence as a matter of law.

2. *Roberts* was a Federal Tort Claims Act case tried without a jury. *See* 28 U.S.C. §§ 1346, 2402 (1982). The trial judge did not clearly state whether he considered the plaintiff to have been contributorily negligent as a matter of law.

In *Roberts*, the plaintiff was injured when, after being invited to dinner at an Army Officers' Club, she was moved by curiosity to stray into a darkened *and closed* area of the club. In finding that the plaintiff had been contributorily negligent, the court emphasized not only the darkness through which the plaintiff traveled, but also that the plaintiff had no valid purpose for wandering through the closed areas of the club.[3] 514 F.Supp. at 715–18. The court also noted that the plaintiff had proceeded in the darkness without paying close attention to what she was doing, even though she had encountered a barricade and could see in the distance that there were possible hazards. *Id.* at 717. It is clear from *Roberts*, then, that it was a *combination* of factors—including the darkened state of the plaintiff's surroundings—that led the trial judge to conclude that the plaintiff had been contributorily negligent. In the instant case, Potomac has not met its heavy burden of demonstrating that a rational jury could not have found that Jeffries acted reasonably under the totality of the circumstances. Accordingly, the trial judge did not err in denying Potomac's motion for JNOV.

### B. *Admissibility of Evidence that Potomac Violated Safety Regulations*

On appeal, Potomac argues that the trial judge committed three errors that warrant a reversal of the judgments against it and a remand for a new trial. Potomac's first contention is that the trial judge erred by admitting—over its counsel's objections—evidence that it had violated both federal and District of Columbia safety regulations. The applicable regulations, Potomac argues, were enacted solely for the benefit of employees; hence, evidence that it violated the regulations was not admissible to help prove the breach of a duty owed to Jeffries, who was not an employee of the

company. We find Potomac's contention to be without merit.

Prior to trial, plaintiff's counsel apprised the court and Potomac of his intention to present an expert witness, Charles Greene, to testify that Potomac's failure to construct a landing at the base of the staircase, to ensure sufficient lighting in the stairwell, and to place barricades in front of the unfinished stairwell, constituted violations of regulations promulgated under the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678 (1982), and the District of Columbia Industrial Safety Law, D.C. CODE ANN. §§ 36–221 to 36–232 (1981). In a pre-trial motion *in limine*, plaintiff's counsel requested a ruling that such evidence would establish negligence *per se*, thereby precluding Potomac from asserting the defense of contributory negligence. *See Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 71 (D.C.1978) (the contributory negligence of an intended beneficiary of a safety regulation does not bar recovery based on an employer's violation of the regulation). The trial judge denied counsel's request on the ground that Jeffries was not an employee of Potomac at the time of the accident, and hence not an intended beneficiary of the applicable safety regulations.[4] *See* Tr. at 8–11. However, the trial judge allowed plaintiff's counsel—over Potomac's objections—to introduce evidence of safety violations as *one component* of his proof that Potomac had been negligent under the circumstances. *Id.* at 382–85. Potomac contends that the evidence of safety violations was irrelevant to the issue of whether it breached its duty of care towards Jeffries, and that admission of the evidence constituted reversible error.

Concededly, the law of the District of Columbia regarding the admissibility of evidence of safety violations under circumstances such as those presented here is unsettled. In a 1948 decision, the Munici-

---

**3.** In the instant case, Jeffries was on Potomac's construction site for a legitimate purpose. *See* Part II.C. *infra.*

**4.** By their terms, both the federal and District of Columbia statutes under which the safety regu-

lations were promulgated are directed at the employer-employee relationship. *See* 29 U.S.C. §§ 651–655 (1982); D.C. CODE ANN. § 36–221 (1981).

pal Court of Appeals for the District of Columbia suggested that such evidence could not be admitted in support of a plaintiff's negligence claim where the statute under which the safety regulations were promulgated did not—as here—explicitly apply to the plaintiff. *See Kurtz v. Capital Wall Paper Co.,* 61 A.2d 470 (D.C. 1948).[5] Twenty-three years later, however, this court cast doubt on the continued vitality of *Kurtz* by suggesting that certain plaintiffs not explicitly covered by safety regulations promulgated under the very same statute could nevertheless rely on violations of the regulations to establish negligence *per se. See Bowman v. Redding & Co.,* 449 F.2d 956, 963–64 (D.C. Cir.1971).[6] *Kurtz* and *Bowman* appear to be clearly at odds on the point at issue here. However, what is most significant is that, in an even later case—decided after both *Kurtz* and *Bowman*—the District of Columbia Court of Appeals acknowledged the earlier conflicting precedent and expressly declined to decide "under what circumstances ... a person other than a wage earner might be an intended beneficiary of these safety regulations." *See Martin,* 395 A.2d at 71 n. 9. If anything, given the way the court in *Martin* phrases the issue—*i.e.,* with an eye toward allowing non-employees to rely on safety regulations to establish negligence *per se*—it could be argued that the District of Columbia Court of Appeals foresaw no problem whatsoever in connection with the admissibility of such evidence to support a claim of negligence.

▮ In any event, we need not decide whether the trial judge erred in holding that Jeffries could not rely on Potomac's safety violations to establish negligence *per se,* and that Potomac could therefore assert the defense of contributory negligence. The relevant issue on appeal is whether the jury should have been precluded from *even considering* whether Potomac's alleged violations of safety regulations supported Jeffries' claim that Potomac acted negligently under the totality of the circumstances. "The lack of clarity of tort law in this jurisdiction ... does not absolve this court of the duty of resolving [this] issue in the manner which, in our best lights, we predict that the District of Columbia Court of Appeals would were it presented with the question." *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 824 (D.C. Cir.1984) (footnote omitted); *see also Gearhart v. Uniden Corp. of Am.,* 781 F.2d 147, 149 (8th Cir.1986); *Molsbergen v. United States,* 757 F.2d 1016, 1020 (9th Cir.1985). Because we have no good basis for finding that the District of Columbia Court of Appeals would deem such evidence irrelevant to the determination of Potomac's liability for negligence, we do not think that the trial judge erred by admitting it.

Although a uniform test for determining when the transgression of statutory or regulatory safety standards constitutes negligence *per se* has proved elusive, there is general agreement on the principle that such transgressions are at least *relevant* to the issue of whether the transgressor has been negligent:

> [T]he existence of a statute does not prevent an action for common law negligence; and where the statute does set up

---

5. *Kurtz* arose in a different posture than the instant case. In *Kurtz,* the trial judge excluded evidence concerning an alleged violation of a safety regulation, and the plaintiff appealed. The appellate court ruled that the trial judge "was correct in declining to let the jury consider the tendered regulation as a basis of additional support for plaintiff's [negligence] claim." 61 A.2d at 471. This language suggests that the trial judge might have committed reversible error had he allowed the jury to consider the evidence.

6. The plaintiff in *Bowman* was an "apprentice caulker" who—although the court's opinion is somewhat obscure on this point—appears to have been invited to the construction site to assist a subcontractor in the caulking of windows. *See* 449 F.2d at 958–59; *cf. Kurtz,* 61 A.2d at 470 (plaintiff, a customer of the defendant, invited to defendant's plant to use power-driven wallpaper trimming machine). The court found that the applicable safety regulations "must be taken at least as broadly as protecting all those whose business brought them to the building under construction and the zone of danger," 449 F.2d at 964, even though the person whose "business" brought him or her to the construction site might not fall within the explicit coverage of the statute.

standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable person under the circumstances, which the jury should be permitted to consider. There is, in other words, a statutory custom, which is entitled to admission as evidence.

W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 231 (5th ed. 1984); *see also Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 n. 22 (5th Cir.1981) ("A plaintiff may properly offer a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence per se."); *Butler v. L. Sonneborn Sons, Inc.*, 296 F.2d 623, 626 (2d Cir.1961) (even if the violation of a regulatory standard may not be used to establish negligence *per se*, evidence of the violation should be admissible where "the ordinary canons of relevancy are met") (quoting 2 F. HARPER & F. JAMES, THE LAW OF TORTS 1005 (1956)).

Here, the regulations at issue embody the considered judgments of those charged with the duty of administering the relevant statutes that certain minimum precautions must be taken to guard against accidents precisely like the one suffered by Jeffries. We do not believe that the District of Columbia Court of Appeals would deem those judgments to be irrelevant to the determination by the jury of whether Potomac's nonfeasance in this case was unreasonable and hence negligent. We reach this conclusion in the light of the prevailing authorities on this point, the implicit rejection of *Kurtz* by the court in *Bowman*, and the District of Columbia Court of Appeals' failure to endorse *Kurtz*. Accordingly, we hold that the trial judge did not err by admitting testimony regarding alleged safety violations committed by Potomac.

C. *Jeffries' Status on the Construction Site*

 Potomac's second argument in support of its request for a new trial centers on the status of Jeffries at the time of his accident. At trial, Potomac attempted to characterize Jeffries as a trespasser upon its construction site. Under District of Columbia law, a trespasser "may, generally speaking, only recover from landowners for injuries that were willful, wanton, or that resulted from maintenance of a hidden engine of destruction." *Holland v. Baltimore & O.R.R.*, 431 A.2d 597, 601 (D.C. 1981) (en banc). The trial judge, however, ruled that Jeffries was a "licensee by invitation," to whom Potomac owed a duty "to exercise reasonable and ordinary care and to provide reasonably safe premises." *Firfer v. United States*, 208 F.2d 524, 527 (D.C. Cir.1953). Potomac contends that the trial judge erred by not submitting the question of Jeffries' status to the jury. We do not agree.

In resolving questions concerning a plaintiff's status on another person's or entity's property, and the attendant duties owed to that plaintiff, the District of Columbia Court of Appeals applies this circuit's decision in *Firfer*. *See WMATA v. Ward*, 433 A.2d 1072, 1073–74 (D.C.1981); *Holland*, 431 A.2d at 598–601; *Copeland v. Baltimore & O.R.R.*, 416 A.2d 1, 2–3 (D.C.1980). Under *Firfer*, a plaintiff is considered a "licensee by invitation," rather than a "bare licensee" or trespasser, if he is invited onto the defendant's land "by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner (or occupant) had given his consent to the entry." 208 F.2d at 527. If there is a dispute regarding the facts surrounding the plaintiff's entry upon the premises, the issue of the plaintiff's status should be submitted to the jury. *WMATA*, 433 A.2d at 1073; *Willis v. Stewart*, 190 A.2d 814, 816 (D.C.1963). However, if there are no "issues of fact created by a contrariety of evidence," the plaintiff's status is a legal question to be decided by the court. *Arthur v. Standard Engineering Co.*, 193 F.2d 903, 906 (D.C. Cir.1951), *cert. denied*, 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361 (1952).

In denying Potomac's post-trial motion for a new trial, the trial judge found that the testimony and evidence was uncontra-

dicted on the following five facts: (1) it is common practice in the construction trade to walk onto a job site in search of work;[7] (2) on the day of the accident two men who were at the site directed Jeffries to the third floor of the building; (3) the construction gate was unlocked on the day of the accident; (4) Jeffries had thirty years of experience in the construction trade and had performed work in connection with Potomac's construction project on an earlier occasion; and (5) Jeffries was aware that work might be available at the site. App. at AA–4. On appeal, Potomac has failed to cite any record evidence that would contradict these five facts, which taken together clearly establish that Jeffries was a licensee by invitation within the meaning of *Firfer*. Accordingly, we hold that the trial judge acted properly in not submitting the question of Jeffries' status to the jury.

### D. *Dismissal of Potomac's Third-Party Complaint*

Potomac's final argument for granting it a new trial is that the trial judge erred by dismissing its third-party complaint. In Potomac's view, the trial judge should have submitted its third-party claims to the jury for resolution. We find Potomac's argument to be wholly without merit.

At no time prior to trial did Potomac request a jury trial on its third-party claims. In an action tried by a court without a jury, Fed.R.Civ.P. 41(b) authorizes the trial judge to dismiss the complaint where the plaintiff, having completed its presentation of evidence, has failed to demonstrate a right to relief. Here, the trial judge determined after Potomac's presentation of evidence that Potomac had shown no right to relief against its subcontractors, and Potomac has failed to identify any error underlying the trial judge's determination. Accordingly, Potomac has no basis for asserting a right to a new trial on its third-party complaint.

■■■ Potomac observes that the parties agreed prior to trial—at the prompting of the trial judge—that its third-party claims would be submitted to the jury for an *advisory* verdict. The trial judge, however, believed that the absence of evidence against the third-party defendants made it unnecessary for her to seek an advisory verdict. We cannot find that the trial judge's decision to foresake an advisory verdict constituted reversible error, particularly where Potomac has failed to cite any record evidence that would support its claims against the third-party defendants.[8]

### E. *Remittitur*

■■■ Finally, Potomac argues in the alternative that this court should reduce the jury verdict of $400,000, which Potomac characterizes as excessive. We do not agree with Potomac that remittitur is warranted under the circumstances of this case. Accordingly, we decline to disturb the jury's verdict.

The District of Columbia Court of Appeals has stated two alternative tests for determining whether a jury verdict is ex-

---

**7.** When pressed at oral argument, Potomac's counsel conceded that this practice was followed on this particular construction project.

**8.** Potomac contends that its case against the third-party defendants was prejudiced by the trial judge's refusal to allow it to cross-examine Jeffries' expert witness, Charles Greene, about the duties imposed on subcontractors by federal and District of Columbia safety regulations. In the circumstances presented, however, we find that the trial judge acted well within her discretion by limiting Potomac's cross-examination. Fed.R.Evid. 611(b) provides that cross-examination should be limited to the subject matter of the direct examination, although the court may, "in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Here, Jeffries did not sue the third-party defendants; hence, his counsel had no cause to explore the issue of the third-party defendants' safety responsibilities in his direct examination of Greene. The trial judge was therefore required to decide whether or not to allow Potomac's cross-examination of Greene to extend to the issue of the third-party defendants' safety responsibilities. Because Potomac had never identified Greene as one of *its* expert witnesses—as required by Fed.R.Civ.P. 26(b)(4)—the trial judge found that it would be prejudicial to the other parties to allow Potomac to cross-examine Greene on this issue. This decision, if not compelled by Rule 26(b)(4), was certainly not an abuse of the trial judge's discretion to limit Potomac's cross-examination to matters raised on direct.

cessive, thereby justifying remittitur. The first formulation is "whether the verdict is 'beyond all reason, or ... is so great as to shock the conscience.'" *Wingfield v. Peoples Drug Store,* 379 A.2d 685, 687 (D.C. 1977) (quoting *Williams v. Steuart Motor Co.,* 494 F.2d 1074, 1085 (D.C.Cir.1974) (omission by quoting court)). The second formulation is "whether the verdict 'is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.'" *Id.* (quoting *Graling v. Reilly,* 214 F.Supp. 234, 235 (D.D.C.1963)). The granting of a motion for remittitur is "particularly within the discretion of the trial court," and appellate review is therefore "limited to determining whether there has been an abuse of discretion." *Doe v. Binker,* 492 A.2d 857, 863 (D.C.1985). *See also Taylor v. Washington Terminal Co.,* 409 F.2d 145, 147–48 (D.C.Cir.), *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969).

In the instant case, we cannot find that the trial judge abused her discretion in concluding that the jury verdict in favor of Jeffries was not excessive. In denying Potomac's motion for remittitur, the trial judge carefully reviewed the medical evidence on the nature and extent of Jeffries' injuries. That evidence demonstrated, *inter alia,* that Jeffries suffered an extremely devastating injury to his right ankle, resulting in a fifty percent permanent partial impairment of the right leg; that Jeffries suffered a severe injury to his shoulder, resulting in a thirty-five percent permanent partial impairment of the shoulder joint; that Jeffries' injuries would require further surgery; and that the injuries cause Jeffries constant pain and discomfort. The trial judge further noted that Potomac had presented no medical evidence of its own to counter the evidence presented by Jeffries, and that Potomac's counsel barely cross-examined Jeffries regarding Jeffries' own account of his injuries. App. at AA–13. In view of the "*unchallenged*

highly credible testimony documenting the extent and severity of the injuries suffered" by Jeffries, the trial judge concluded that the jury's verdict, though "generous," was not unreasonable or shocking to the conscience. *Id.* (emphasis in original). Potomac has offered nothing on appeal to suggest that this determination constituted an abuse of discretion.

### III. Conclusion

For the reasons set forth above, Potomac's appeal is

*Denied.*

SILBERMAN, Circuit Judge, concurring and dissenting:

I concur in all parts of the majority opinion except Section II.B. Since *Kurtz v. Capital Wall Paper Co.,* 61 A.2d 470 (D.C. 1948), remains the law of the District of Columbia, we are bound in a diversity case to apply it even if we suspect that the District of Columbia Court of Appeals would overrule it if the issue were properly presented today. Accordingly, I respectfully dissent.

I do not see how one can read *Bowman v. Redding & Co., Inc.,* 449 F.2d 956 (D.C. Cir.1971), one of our own opinions, as "cast[ing] doubt on the continuing validity" of *Kurtz.* Maj. op. at 93. *Bowman* issued fifteen days after the D.C. Circuit lost its appellate jurisdiction over the District of Columbia court system,[1] (although Judge Leventhal probably wrote the opinion earlier—under the old regime—when he arguably was free to overrule D.C. local court precedent). Now, of course, we must apply D.C. law as if *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applied. *See Lee v. Flintkote Co.,* 593 F.2d 1275, 1278 n. 14 (D.C.Cir.1979). In any event, the *Bowman* court did not even mention *Kurtz,* much less explicitly or implicitly overrule it. I therefore think *Bowman,* at best, stands for the limited proposition that a general contractor owes a

---

1. The District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970), made the D.C. Court of Appeals the "highest court of the District of Columbia," *id.* at § 102, and eliminated the D.C. Circuit's appellate jurisdiction effective February 1, 1971. *See id.* at §§ 102, 301. *Bowman* was decided on February 16, 1971.

statutory duty of care not only to his own employees, but also to a subcontractor's employees working on a common construction site. It is not unusual for construction sites to be treated as *sui generis*. *See, e.g.,* 29 U.S.C. § 158(e) (1982).

That the D.C. Court of Appeals in *Martin v. George Hyman Constr. Co.,* 395 A.2d 63 (1978), said in a footnote "[w]e need not address whether and, if so, under what circumstances a person other than a wage earner might be an intended beneficiary of these safety regulations, *compare Kurtz v. Capital Wall Paper Co. with Bowman v. Redding & Co., Inc., id.*" at 71 n. 9 (citations omitted), cannot possibly be given the meaning the majority takes: that the D.C. Court of Appeals was disapproving *Kurtz* or was cutting *Kurtz* adrift to be sunk by the federal courts. On the contrary, it seems quite clear that the Court of Appeals was reserving for itself any reexamination of *Kurtz*. It is, I believe, bad business for us to encourage litigants, who might well prefer the federal courts because of speed, to think we have so little hesitation in circumventing D.C. precedent.