35 Ill.2d 145 (1966)
219 N.E.2d 529
AMERICAN NATIONAL BANK AND TRUST COMPANY, Guardian of the Estate of Henry Lee Edwards, Appellee,
v.
THE PENNSYLVANIA RAILROAD COMPANY et al., Appellants.
No. 39074.
Supreme Court of Illinois.
Opinion filed June 16, 1966.
Rehearing denied September 21, 1966.
*146 CORNELIUS P. CALLAHAN, of Chicago, for appellants.
LOUIS G. DAVIDSON, of Chicago, for appellee.
DOUGLAS C. MOIR, EDWARD L. FOOTE, ROBERT W. RUSSELL, JAMES DALEY, JOHN W. FOSTER, ROBERT S. KIRBY, RICHARD O. OLSON, ALVIN A. DOMASH, JOHN H. GOBEL, O.L. HOUTS, FLOYD STUPPI, and JOHN J. SCHMIDT, for amici curiae.
Judgment affirmed.
*147 Mr. JUSTICE HOUSE delivered the opinion of the court:
This action was commenced in the circuit court of Cook County by American National Bank and Trust Company, guardian of the estate of Henry Lee Edwards, a minor, against the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, the Pennsylvania Railroad Company and the Philadelphia, Baltimore and Washington Railroad Company to recover damages for injuries suffered by the Edwards boy when he was run over by one of Milwaukee's trains. The jury returned a verdict against all three defendants in the amount of $275,000 and judgment was entered on the verdict. The Milwaukee paid plaintiff the sum of $75,000 for a covenant not to enforce the judgment against it and the other two defendants appealed to the Appellate Court, First Judicial District. That court affirmed the judgment, (American National Bank and Trust Co. v. Pennsylvania Railroad Co. 52 Ill. App.2d 406,) and we granted leave to appeal.
There is no dispute as to the facts which are covered in more detail in the Appellate Court opinion. On June 12, 1959, Henry Edwards and his friend Jose Lopez boarded a tank car on a slow moving Milwaukee freight train and rode it a few blocks to the Van Buren Street underpass on their way to a playground on Van Buren Street. As they were stepping off the train, Edwards bumped into Lopez, fell and suffered traumatic amputation of his legs.
The Philadelphia, Baltimore and Washington Railroad Company is a subsidiary of the Pennsylvania and these two railroads have been treated throughout these proceedings as a single defendant. They leased to the Milwaukee the track on which the train was operating when the boy was injured.
Count I of the amended complaint charges the Pennsylvania with failure to comply with the fencing requirements of a city of Chicago special contract ordinance passed on January 18, 1897. The ordinance required the accepting *148 railroads to elevate certain portions of their track, to construct underpasses at various intersecting streets and to either build retaining walls for the elevations or enclose them with fences in accordance with the fencing ordinance of 1890. In return, other city ordinances relating to speed, the giving of signals and the maintenance of gates, flagmen, watchmen, signals and signal towers were to be inapplicable where the tracks were elevated. It is not disputed that the ordinance was accepted by the Pennsylvania's predecessors in title, that the track where the accident occurred is elevated and that there is no retaining wall or fence enclosing the elevation.
The Pennsylvania has devoted over one-half of its brief to, and strenuously asserts, five different grounds for holding the ordinance invalid and three grounds for holding it was not applicable to it. An amici curiae brief has been filed by nine major railroad companies urging us to reverse that portion of the Appellate Court opinion holding that the ordinance in question is valid and binding on the Pennsylvania.
In 1913 the legislature of this State enacted a Public Utilities Act which became effective January 1, 1914, (Laws of 1913, pp. 459-502,) vesting general supervision over all public utilities, including railroads, in the Public Utilities Commission which, by act of 1921, became the Illinois Commerce Commission. (Laws of 1921, pp. 702-754.) Prior to that time and until 1925, cities and villages regularly enacted ordinances affecting railroad operations. The Chicago speed ordinance of March 26, 1890, (which contains the fencing requirement herein in question) was, for example, re-enacted several times prior to 1922, under power granted by paragraph 26 of section 1 of article V of the Cities and Villages Act of 1872. (Ill. Rev. Stat. 1874, chap. 24, par. 62; see Heiting v. Chicago, Rock Island and Pacific Railway Co. 252 Ill. 466.) In 1925 this court ruled, *149 however, that the legislature by enacting the Public Utility acts of 1913 and 1921 had withdrawn from municipalities their authority to pass new, or enforce existing, ordinances which related to public utilities. (Village of Atwood v. Cincinnati, Indianapolis and Western Railroad, 316 Ill. 425; Northern Trust Co. v. Chicago Railways Co. 318 Ill. 402.) This holding was also applied where the ordinance was of a special contract nature. (City of Chicago v. Commerce Com. ex rel. Chicago and Western Indiana Railroad Co. 356 Ill. 501; City of Chicago v. Chicago and North Western Railway Co. 4 Ill.2d 307.) Furthermore, since 1957 the Commerce Commission has been given explicit authority to regulate right-of-way fences. Ill. Rev. Stat. 1957, chap. 111 2/3, par. 61.
The Appellate Court, while recognizing the above holding by this court, nevertheless held the ordinance valid by its interpretation of the Commerce Commission's General Orders 121 and 138. In the 1925 Northern Trust case this court stated, "If it had been deemed wise or necessary, municipal ordinances and police regulations relating to public utilities could have been continued in force until the commission acted, by a saving provision in the act or by an order to that effect from the commission itself." 318 Ill. 402, 412.) Shortly after this the Commission adopted General Order 121 which provided that the practices and operations established and maintained by public utilities as of October 28, 1925, in compliance with any municipal ordinances providing for the protection of the health, comfort or safety of employees or the public were to be continued and maintained. In 1937 it adopted General Order 138 which among other things provided "that General Order 121, to the extent that it applies to railroads, should be deemed to be superseded and rescinded by General Order 138."
The Appellate Court opinion assumes that General Order *150 121 effectively continued the police regulations in the form of city ordinances or regulations. It then construed General Order 138 as rescinding only those railroad ordinance requirements revived by General Order 121 relating to marking, maintenance, construction and protection of crossings.
The amici curiae assert that this holding will put the regulation of railroads in complete chaos. They point out that it will now be necessary for them to determine what regulatory ordinances affecting railroads were passed by every city and village in the State prior to 1926 and then compare these ordinances with the Commerce Commission regulations to learn what their responsibility is in each city and village in the State. They submit that it was to avoid such confusing and overlapping regulation that the Commerce Commission was given exclusive control over railroads.
The Appellate Court in reaching its determination on this point first found that the language "General Order 121, to the extent that it applies to railroads, should be deemed to be superseded and rescinded by General Order 138" is ambiguous. In arriving at the construction to be given this "ambiguous" language it noted that section 67 of the Public Utilities Act requires notice to interested parties and a hearing before an order of the Commission can be altered or amended; that section 69 of the act requires a rescinding order to be based upon findings of fact which in turn must be based upon the evidence presented; that the notice and hearings upon which General Order 138 is based relate only to rules and regulations and requirements relating to the construction, maintenance, marking and protection of crossing of highways and railroads; that the Commission knew of the requirements of sections 67 and 69 of the act and knew of the extent of the notice and hearings upon which General Order 138 is based; and that therefore the Commission only intended to rescind all railroad ordinance requirements covered by General Order *151 121 relating to marking, maintenance, construction and protection of crossings.
First, we find nothing ambiguous in the language of General Order 138 rescinding General Order 121 to the extent that it applies to railroads. Next, we note that General Order 121 is subject to exactly the same objections advanced against the broad rescinding language of General Order 138. General Order 121 was issued without notice, hearings or testimony. Thus, we have a situation where the rescinded order is subject to the same objections leveled at the broad language of the rescinding order. It follows that if General Order 121 is valid, then General Order 138 validly rescinded it as to railroads; if, however, General Order 138 does not validly rescind General Order 121, then General Order 121 was not effective in the first place. In either event, General Order 121, to the extent it applies to railroads, is no longer effective and was not effective at the time of the accident in this case.
We hold, therefore, that the trial court erred in permitting the admission into evidence and reading to the jury of the ordinances of 1890, 1896, 1897, 1898, 1905, 1906 and 1911. In arguing that this error was prejudicial, the Pennsylvania also points out that quotations from and references to the ordinances occupy more than one half of the amended complaint, that they are referred to or quoted from on nearly one half of the pages of the abstracts, that plaintiff's counsel placed great stress on them in his opening and closing arguments to the jury and that the ordinance of 1897 formed the basis of one instruction. Whether all this emphasis that was placed on the invalid ordinances requires us to grant a new trial depends on the effect such emphasis may have had on the other bases of liability advanced against the Pennsylvania.
A second basis of liability advanced against the Pennsylvania was that it was vicariously liable for the negligence of the Milwaukee. It is well established that where an *152 injury results from the negligent or unlawful operation of a railroad, whether by the owner or by another company authorized or permitted to use the tracks, both railroad companies are jointly and severally liable for damages to the injured. (Armstrong v. Chicago and Western Indiana Railroad Co. 350 Ill. 426; Chicago and Eastern Railroad Co. v. Schmitz, 211 Ill. 446; Chicago and Grand Trunk Railway Co. v. Hart, 209 Ill. 414.) It is not disputed that the Milwaukee was the lessee of the Pennsylvania.
The amended complaint charged the Milwaukee with negligently operating the train. The court instructed the jury that the Milwaukee "had no duty to erect and maintain a fence on the premises in question, nor to maintain the walls of said elevation nor to maintain the premises in question." Plaintiff's counsel in his opening and closing statements to the jury said the ordinances applied only to the Pennsylvania and that the Milwaukee had no duty to fence the right of way. A fair reading of the record convinces us that the jury could not have been prejudiced by the stress placed on the ordinances in rendering judgment against the Milwaukee.
There is sufficient evidence in the record from which the jury could find that the train crew on the Milwaukee was negligent and the Pennsylvania does not question this point. Rather, it argues that we should hold as a matter of law that the Edwards boy was guilty of contributory negligence and that this contributory negligence was the sole proximate cause of the accident.
In Maskaliunas v. Chicago and Western Indiana Railroad Co. 318 Ill. 142, it was said, "The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child." 318 Ill. 142, *153 150; see also Deming v. City of Chicago, 321 Ill. 341; Wolczek v. Public Service Co. of Northern Illinois, 342 Ill. 482.) Since the Edwards boys was 13 years old at the time of the accident, the question of his negligence must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child. Nor can we hold as a matter of law that a minor between the ages of seven and fourteen violated a penal statute (Ill. Rev. Stat. 1957, chap. 114, par. 72,) or penal ordinance. (Chicago, Illinois Municipal Code 1939, chap. 190-3; see People v. Lang, 402 Ill. 170; Maskaliunas v. Chicago and Western Indiana Railroad Co. 318 Ill. 142.) We hold that the question of contributory negligence was properly submitted to the jury and that the jury was properly instructed on the issue as fully explained in the Appellate Court opinion.
The Pennsylvania also argues that the court erred in refusing to give the jury a form of verdict in which it could find the Milwaukee guilty and the Pennsylvania not guilty. The Appellate Court opinion properly disposes of this contention.
This brings us to the third and final basis of liability advanced against the Pennsylvania. Under count II the Pennsylvania was charged with negligent violation of its common-law duty to fence the right of way for the protection of children. The trial court, under count II, gave I.P.I. No. 120.04 covering injury to a trespassing child. The parties have argued strenuously the question of whether the attractive nuisance doctrine applies to the facts disclosed by this case and the Appellate Court considered it at length.
As to the Milwaukee, the court gave I.P.I. No. 120.03 covering injury caused by activities of an occupant of land. Since the liability of the Milwaukee was not based on the attractive nuisance doctrine and since the Pennsylvania is *154 vicariously liable for the negligence of the Milwaukee, we see no reason to consider the applicability of the attractive nuisance doctrine as applied to the Pennsylvania.
For the foregoing reasons the judgment of the Appellate Court, First Judicial District, is affirmed.
Judgment affirmed.