Stanley **FOSHEE**, et al., Plaintiffs,

v.

**CONSOLIDATED RAIL CORPORATION,** Defendant.

Civ. A. No. 85–2095.

United States District Court, District of Columbia.

May 18, 1987.

Michael A. Abelson, Washington, D.C., for plaintiffs.

Stephen A. Trimble, James B. Sarsfield, Hamilton & Hamilton, Washington, D.C., for defendant.

## OPINION

HAROLD H. GREENE, District Judge.

On July 25, 1982, Derek Foshee, then a thirteen-year old boy, was seriously injured, losing both legs and an arm,[1] by a Conrail freight train on the main Conrail tracks in northeast Washington. After a trial, the jury returned a verdict in favor of plaintiffs, awarding $1.5 million to Derek and $70,859.10 to his parents.[2] Presently pending before the Court is the railroad's motion for a judgment notwithstanding the verdict pursuant to Rule 50(b), Fed.R. Civ.P.[3] Three principal arguments are made in support of the motion, as follows.

### I

The railroad contends that under District of Columbia law [4] plaintiff was either a

---

1. As a result, Derek Foshee is confined to a wheelchair. As a result of the accident, he also suffered a brain contusion, fractured skull, cardio-pulmonary arrest, bradycardia, and loss of consciousness.

2. Both Derek and his parents will hereinafter be referred to as "plaintiff" or "Derek Foshee."

3. Alternatively, the railroad requests a new trial pursuant to Rule 50(a), Fed.R.Civ.P.

4. Exercising its diversity jurisdiction, this Court is of course obliged to apply the substantive law of the District of Columbia as announced by its highest court. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938);

trespasser or a bare licensee, and that on either hypothesis, it only owed him the duty not to engage in intentional or willful injury.[5] This argument depends upon the continuing vitality of a thirty-four-year old decision of the U.S. Court of Appeals for this Circuit in *Firfer v. United States,* 208 F.2d 524 (D.C.Cir.1953), which, in pertinent part, decided that mere acquiescence by a landowner to the use by the public of his property does not elevate any particular member of that public to a status higher than that of bare licensee to whom only the duty not to engage in intentional injury is owed.

Several decisions of the District of Columbia Court of Appeals since *Firfer* have dealt with the landowner liability question and, in the opinion of this Court, their effect has been to undermine the value of *Firfer* as binding precedent.[6]

In *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C.Cir.1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973), the U.S. Court of Appeals rejected the common law theories predicating landowner liability on the status of the entrant and enunciated a single standard of care owed to all entrants: "[a] landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances." 469 F.2d at 100. The court went on to state that in determining the degree of care demanded in a specific situation, the jury should consider " 'the likelihood that [the landowner's] conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which [the landowner] must sacrifice to avoid the risk' " (citation omitted).

In 1981, the D.C. Court of Appeals confronted the same issues on an *en banc* basis in *Holland v. Baltimore and Ohio R.R. Co.,* 431 A.2d 597 (D.C.App.1981). One of the issues before the court in that case was the question whether the *Firfer* rule should be abandoned with respect to a landowner's liability to trespassers. Noting that the trespasser classification had not been included in the movement towards abolishing distinctions between a landowner's liability on the basis of the plaintiff's status, the court held that the standard set forth in *Firfer* pertaining to a landowner's liability to trespassers remained valid precedent. 431 A.2d at 596–97. In the court's view, the single standard of care set forth in *Arbaugh* was without precedential effect with regard to trespassers.[7]

Although it is defendant's position that *Holland* authoritatively resurrected the *Firfer* rule with its strict distinctions among separate classes of individuals who may be found on the land of others, it does not appear that the D.C. Court of Appeals views the situation in that manner. In fact, shortly after *Holland* was handed down, the local appellate court reversed a trial court decision which did not accord the plaintiff the invitee status to which, in the view of the appellate tribunal, she might well have been entitled. *Washington Metropolitan Area Transit Authority v. Ward,* 433 A.2d 1072 (D.C.App.1981). Judge Ferren stated in his concurrence that, with respect to both licensees and invitees, the standard to be applied is that of reasonable care under the circumstances. 433 A.2d at 1074. That is also the view espoused in recent decades by the

---

*United States ex rel. Small Business Administration v. Pena,* 731 F.2d 8 (D.C.Cir.1984).

**5.** The landowner is also required not to maintain a hidden engine of destruction.

**6.** The D.C. Court Reorganization Act of 1970, Pub.L. 91–358, substituted the D.C. Court of Appeals for the U.S. Court of Appeals for the District of Columbia Circuit as the highest court of the District of Columbia. The D.C. Court of Appeals has ruled that it would continue to be bound by any pre-reorganization decision of the U.S. Court of Appeals unless that decision was

overruled by an *en banc* holding of the D.C. Court of Appeals. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.App.1971).

**7.** The court gave two reasons for that conclusion: (1) the issue of the duty of care owed a trespasser by a landowner was not before the court; and (2) at the time the *Arbaugh* decision was handed down the United States Court of Appeals for the D.C. Circuit was " 'no longer the authoritative expositor of the common law of the District of Columbia' " because of court reorganization. *Id.* at 600–01 (citation omitted).

great majority of other jurisdictions [8] and, as noted above, by the U.S. Court of Appeals for this Circuit. *See Arbaugh's, supra.*[9]

■ In view of this history, this Court is not prepared to hold that the District of Columbia still clings to the *Firfer* rule. The appropriate way to measure the duty of a landowner toward those on his land is to determine whether he exercised toward them reasonable care under the circumstances.

It follows from what has been said that the railroad's motion cannot be granted on the basis that, under District of Columbia law properly interpreted, it only owed to plaintiff the duty not intentionally to injure him. The true test is that of reasonable care under the circumstances, and the motion will now be considered in light of that standard.

## II

The railroad contends next that, whatever the standard, there was no proof at the trial that it was negligent. In order to evaluate that contention, a brief summary of the evidence of this tragic accident is in order. Derek Foshee entered upon the railroad property with six of his friends, one of their purposes being to traverse the railroad land to visit a video arcade on the other side of the tracks. There was some discussion of "hopping" a Conrail freight train that was approaching—as some of the boys in the area had done on quite a few occasions—but the evidence does not reveal with certainty what conclusion, if any, was reached in regard to such an enterprise.[10]

Suffice it to say that eventually the train—approximately one mile long and consisting of six engines, 98 freight cars, and a caboose—passed the area where the boys were congregated at a speed of nineteen miles per hour[11] within a distance of no more than ten feet from Derek Foshee.

There was a gap in the evidence as to what occurred next. Plaintiff himself stated, with some support in the medical records, that, as a consequence of the trauma he suffered, he has no memory of how the accident occurred. Each of his companions testified in almost identical language that at the time of the accident he was looking in the opposite direction and thus could not describe what precipitated the accident and plaintiff's injuries. All that is clear is that Derek Foshee somehow came to be under the wheels of the train and that he was seriously injured as indicated above.

The issue which the Court must consider is whether under these circumstances there was any evidence upon which a reasonable jury could find the railroad guilty of negligence and, if the answer is in the affirmative, whether that negligence was the proximate cause of the injury. *See generally, Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978); *Pomeroy v. Pennsylvania Railroad,* 223 F.2d 593 (D.C.Cir.1955); *S. Kann's Sons Corp. v. Hayes,* 320 A.2d 593, 595 (D.C.App.1974).

Defendant argues that the proof compels the conclusion that plaintiff was injured while attempting to hop the train. To be sure, there is some evidence to support that contention,[12] but that evidence is not so compelling as to override the jury's verdict.

---

8. *See, e.g., Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971).

9. The Young Lawyers Section of the D.C. Bar Association, which publishes the principal jury instruction handbook used by judges and lawyers alike in this jurisdiction, on the basis of what its members understand the law to be in the District of Columbia, follows this trend by reprinting as the here governing law the rule stated by Judge Ferren in the *Ward* case. *See* Instruction 10–3 (persons lawfully upon the land—definition of and duty toward).

10. But *see infra.*

11. This estimate is supported by a speed tape. Plaintiff contends that the train's speed was ten miles per hour.

12. Plaintiff's companions gave statements to the Homicide Branch of the Metropolitan Police Department indicating that plaintiff's injuries occurred as a result of his second unsuccessful attempt to hop the train. They did not so testify at the trial.

The jury could reasonably have disbelieved the fragments of testimony concerning anyone's plans for hopping the train or that plaintiff actually jumped on the train immediately prior to sustaining his injuries. This evidence alone therefore would not justify the Court either in entering judgment for defendant notwithstanding the verdict or in granting a new trial.

However, the Court has concluded that plaintiff's case suffers from a more fundamental defect which does require it to set aside the jury's verdict and to award judgment to defendant.

■ As the brief discussion above demonstrates, viewing the evidence most favorably to plaintiff, there simply was no evidence that the railroad was negligent and thus legally at fault pursuant to any conceivably applicable test. *See* Part I, *supra.* Plaintiff's sole proof in that regard was that the railroad knew that persons living in the area not infrequently crossed its property in the area of the accident, but that it nevertheless failed to erect fences or to post signs to keep out unwanted persons and that it had also failed to initiate educational programs in the District of Columbia public schools to warn children against railroad dangers. There was evidence that some signs were posted, that plaintiff attended a private school, and that the erection of fences to keep unauthorized persons out of many thousands of square miles of railroad property along the eastern seaboard was not practical.

■ Beyond that, however, even if it be assumed that one or more of these failures of the defendant constituted negligence, it would not materially advance plaintiff's case. The permission, or even invitation, that may conceivably be implied by the railroad's nonfeasance in these regards does not transform that railroad into an insurer against *any* harm that may come to those who avail themselves of that permission or invitation, including harm resulting from plaintiff's own acts or those of third parties. The railroad can be held liable only for such harm as could reasonably be attributed to its malfeasance or nonfeasance.

■ If the plaintiff had, for example, fallen into an unsecured trap on a path leading from one side of the railroad property to the other, the failure to erect fences or to post signs might well amount to such negligence as to render the railroad liable for any resulting injury. But the moving train, clearly visible to plaintiff from ten feet away and making the very loud noise typical of trains,[13] constituted its own warning overriding any failure of the railroad to post warnings at the perimeter of its property.[14]

There was no evidence, and indeed no contention, that railroad personnel saw plaintiff and his companions on the day in question or that they were otherwise aware of their presence. Likewise, there was neither allegation nor evidence that the train jumped the track or for other reasons came into contact with plaintiff as a consequence of mechanical or other failure. In short, the evidence, and indeed logic and common sense, leave no room for any conclusion other than that plaintiff came into contact with the train for some reason unconnected with the railroad: because he hopped that train, because he fell, or conceivably[15] because he was pushed into the moving train in the course of play by one of his companions. Whatever hypothesis is assumed, the accident cannot be regarded as having occurred as a result of the railroad's negligence.[16]

---

**13.** Defendant's proof included a film with an appropriate soundtrack played to the Court and jury of the identical train taken from the scene of the accident.

**14.** The same result obtains if the legal situation is analyzed in terms of proximate cause: if the railroad was negligent in not erecting fences or appropriate signs, that negligence could not reasonably be held to be the proximate cause of the injury at the train track.

**15.** As noted above, there was some evidence that plaintiff may have hopped the train; there was no direct evidence that he fell or was pushed.

**16.** Plaintiff did not rely on res ipsa loquitur, and he could not have done so in any event. *See, e.g., Marshall v. Townsend,* 464 A.2d 144 (D.C. App.1983).

## III

■ The same result flows from an alternative analysis of the law and the evidence. If it be assumed, *arguendo,* that the railroad was negligent, plaintiff still could not recover because of his own contributory negligence.[17]

As discussed above, it is undisputed that plaintiff approached to within a few feet of the train, and there is at least some evidence that he may have hopped that train. In a number of cases in this jurisdiction courts have held that young children, even far younger than this plaintiff, are expected to discover and avoid the danger of a moving train. In *Holland, supra,* the D.C. Court of Appeals, after quoting from an opinion of the California Court of Appeals to the effect that "[n]othing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling string of railroad cars," went on to state:

There are certain obvious conditions which trespassing children are expected to understand as a matter of law. In such cases, "the possessor is free to rely upon the assumption that any child of sufficient age to be allowed at large by his parents and so to be at all likely to trespass, will appreciate the danger and avoid it, or at least made his own intelligent and responsible choice." W. Prosser, *Law of Torts, supra,* § 59 at 371. Prosser reveals this assumption has very often been applied in cases involving moving vehicles. *Id.* In the instant case, as a matter of law, element (c) of [§ 339 of the Restatement (Second) of Torts] is not met since a moving train is a danger so obvious that any nine-year-old child allowed at large would readily discover it and realize the risk involved in coming within the are made dangerous to it. (Citations omitted).

431 A.2d at 603.

Similarly, Judge Oberdorfer of this Court decided in *Edwards v. Consolidated Rail Corporation,* 567 F.Supp. 1087, 1104–05, 1112 (D.D.C.1983), *aff'd without opinion,* 733 F.2d 966 (D.C.Cir.1984), that an eleven-year-old child allowed at large will understand and avoid the danger of a moving train. Judge Gasch concluded in *Alston v. Baltimore and Ohio R.R. Co.,* 433 F.Supp. 553, 569–70 (D.D.C.1977), that a nine-year-old child injured as a result of an unsuccessful attempt to hop a moving train "unquestionably" understood and appreciated the possibility of harm (even the child testified that he "didn't think he would get hurt"). And Judge Richey found in *Windom v. Penn Central Transportation Company,* C.A. No. 479–72 (D.D.C.1973), *aff'd without opinion,* 494 F.2d 1157 (D.C. Cir.1974), that a seven-year, 10–month-old child was contributorily negligent as a matter of law where he sustained injuries upon contact with overhead electrified catenary wires after having climbed to the top of a stationary train.

In short, notwithstanding some factual differences between this case and the precedents cited, the law compels the conclusion that, if the railroad was negligent, plaintiff was guilty of contributory negligence, and that this circumstance, too, prevents him from recovering.

## IV

For the reasons stated, the Court reluctantly[18] concludes that defendant is entitled to the entry of a judgment in its favor notwithstanding the verdict. An order to that effect is being issued contemporaneously herewith.

---

**17.** The subjective corollary to contributory negligence is the doctrine of assumption of risk, *Sinai v. Polinger Co.,* 498 A.2d 520, 523–27 (D.C. App.1985), which could be held applicable here on grounds similar to those which pertain to contributory negligence.

**18.** *See* note 1, *supra.* The plaintiff appears to be an upstanding, clean-cut young man in every respect who lost three limbs and is crippled for life.