**Stanley FOSHEE, et al., Appellants**

v.

**CONSOLIDATED RAIL CORPORATION.**

**No. 87–7107.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1988.

Decided June 17, 1988.

Michael A. Abelson, Washington, D.C., for appellants.

James B. Sarsfield, with whom Stephen A. Trimble, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, and STARR and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

Dissenting opinion filed by Chief Judge WALD.

STARR, Circuit Judge:

This is an appeal from the District Court's grant of a motion for judgment notwithstanding the verdict. The underlying facts are tragic. In the summer of 1982, a thirteen-year-old boy, Derek Christopher Foshee, was seriously injured by a Conrail freight train on the main Conrail tracks in northeast Washington. The case was tried to a jury, which returned a verdict in favor of Derek and his parents.[1] Conrail thereupon moved for j.n.o.v. In a published opinion, Judge Harold Greene granted the motion, *Foshee v. Consolidated Rail Corp.*, 661 F.Supp. 350 (D.D.C. 1987), thereby prompting this appeal. We affirm.

I

The facts which gave rise to this case are amply set forth in the District Court's careful opinion, *id.* at 351, 353. This is what happened:

"Derek Foshee entered upon the railroad property with six of his friends, one of their purposes being to traverse the railroad land to visit a video arcade on the other side of the tracks. There was some discussion of 'hopping' a Conrail freight train that was approaching—as some of the boys in the area had done on quite a few occasions—but the evidence does not reveal with certainty what conclusion, if any, was reached in regard to such an enterprise. Suffice it to say that eventually the train ... passed the area where the boys were congregated at a speed of nineteen miles per hour within a distance of no more than ten feet from Derek Foshee.

There was a gap in the evidence as to what occurred next. * * * All that is

1. The jury awarded $1.5 million to Derek and $70,859.10 to his parents.

clear is that Derek Foshee somehow came to be under the wheel of the train and that he was seriously injured...." *Id.* at 353.

Plaintiffs' theory at trial was, in essence, the following: the site of Derek's injuries is a well beaten passageway across Conrail's Benning Yard, a facility which has been relied upon for more than thirty years by individuals in the River Terrace neighborhood as a shortcut to bordering communities. Conrail's own security personnel grew alarmed as the neighborhood became increasingly dependent upon the Yard as a pedestrian route. Conrail failed to erect fences in the area or to take any affirmative measures to deter the public from entering onto the railroad's property. Given the company's admitted knowledge of the substantial pedestrian traffic, these omissions constituted a failure by Conrail to act reasonably under the circumstances. *Id.* at 354; Brief for Appellants at 1.

In response, Conrail advanced the following arguments: (1) under District of Columbia law, Derek was either a trespasser or bare licensee, to whom the railroad owed only the duty not to inflict intentional or willful injury, *Foshee,* 661 F.Supp. at 351–52; (2) no proof was forthcoming that the railroad was negligent, inasmuch as the evidence compelled "the conclusion that plaintiff was injured while attempting to hop the train," *id.* at 353; and (3) even if the railroad was negligent, plaintiffs still could not recover by virtue of Derek's contributory negligence. *Id.* at 355.

## II

Upon careful review of the record in this case, we are satisfied that Judge Greene, consistent with applicable law,[2] was correct in overturning the jury's verdict. In so concluding, we are not unmindful of the daunting standards to be met before the considered judgment of the community's representatives may lawfully be displaced. *See Tavoulareas v. Piro,* 817 F.2d 762 (D.C.Cir.1987) (en banc); *Vander Zee v. Karabatsos,* 589 F.2d 723 (D.C.Cir.1978). As we see the case, however, those standards were in fact met. In reaching this conclusion, we rely solely on Judge Greene's analysis of contributory negligence.[3]

In light of the applicable D.C. law, we find unimpeachable the District Court's determination that contributory negligence stands as a bar to plaintiffs' recovery. Judge Greene emphasized the *undisputed* fact that Derek came within a few feet of a moving train. Canvassing the opinions of several of his colleagues, as well as the authoritative guidance provided by the D.C. Court of Appeals in *Holland v. Baltimore & O.R.R.,* 431 A.2d 597 (D.C.App.1981) (en banc), Judge Greene observed that it is settled law in this jurisdiction that "young children, even far younger than this plaintiff, are expected to discover and avoid the danger of a moving train." *Foshee,* 661 F.Supp. at 355.

In attacking this pivotal point, plaintiffs quite understandably invoke a long, distinguished line of cases stating the unexcep-

2. After Judge Greene rendered his decision, this court issued an opinion clarifying that *Firfer v. United States,* 208 F.2d 524 (D.C.Cir.1953), represents the controlling articulation of District of Columbia law with respect to landowner liability. *See Jeffries v. Potomac Development Corp.,* 822 F.2d 87 (D.C.Cir.1987). *Firfer,* which had been drawn into question by prior decisions of this court, held that mere acquiescence by a landowner in the use of his property by members of the public would allow an entrant, at most, to lay claim to the status of bare licensee. *Jeffries* makes clear our understanding of D.C. law, namely that the D.C. Court of Appeals' decision in *Holland v. Baltimore & O.R.R.,* 431 A.2d 597 (D.C.App.1981) (en banc), definitively reembraced the rule laid down in *Firfer.* We therefore vacate Part I of Judge Greene's opin-

ion, which suggests that *Firfer* does not represent the law of the District of Columbia.

3. We therefore have no occasion to pass on the trial court's analysis of the negligence issue. We nonetheless believe that a modest observation concerning one of the requisite elements of liability is in order. As Derek encountered the train *after* its locomotive passed by, we question whether on this barren record a jury could find proximate cause. Once we put aside contributory negligence, it seems almost certain that whatever brought about the accident was an intervening (*i.e.,* non-proximate) cause. But in view of the state of D.C. law with respect to contributory negligence, as adumbrated in the text, we do not reach the point.

tionable proposition that contributory negligence is a jury question. Brief for Appellants at 16–17.[4] That general proposition, however, does not somehow work *pro tanto* a repeal of j.n.o.v. law and practice; where, as here, we are confronted with a complete lack of evidence to support the jury's conclusion that Derek was not contributorily negligent (in light of the state of D.C. law as articulated in *Holland* ), entry of j.n.o.v. was appropriate.

Plaintiffs suggest that Derek may not have *voluntarily* come into contact with the train. He may have become dizzy or disoriented, plaintiffs suggest, while waiting for the train to pass. *Id.* at 17. In this respect, plaintiffs invoke testimony from Conrail's own safety director, who opined that individuals "are putting their lives on the line when they get onto the railroad property." *Id.* But that is precisely the point. The settled law of this jurisdiction, which we are duly bound faithfully to follow, is squarely to the effect that the hazards of a moving train are so obvious that even a young child, if old enough to be at large, realizes "the risk involved in ... coming within the area made dangerous by it." *Holland,* 431 A.2d at 602. Judge Greene was therefore correct in abiding by *Holland* 's teaching and concluding, as do we, that "the law compels the conclusion that, if the railroad was negligent, plaintiff was guilty of contributory negligence, and that this circumstance ... prevents him from recovering." *Foshee,* 661 F.Supp. at 355.

*Judgment accordingly.*

**WALD, Chief Judge, dissenting:**

I agree with the majority that "daunting standards ... [must] be met before the

considered judgment of the community's representatives may lawfully be displaced." *See* Majority Opinion at 658. I therefore dissent from affirmance of the district court judgment n.o.v. overturning the jury verdict for appellant Derek Christopher Foshee (Foshee), *see Foshee v. Consolidated Rail Corp.,* 661 F.Supp. 350 (D.D.C. 1987), who had been struck and seriously injured by a train operated by appellee Consolidated Rail Corporation (Conrail).

This court has repeatedly stressed how strictly we review judgments n.o.v.:

> The jury's verdict must stand unless "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict."

*Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.1984) (citing cases). In this case the jury's implicit but necessary finding of causation between Conrail's violation of its duty of care and Foshee's crippling accident has more than sufficient evidentiary basis. Moreover, the *separate* jury verdict that Conrail did not prove Foshee's contributory negligence constitutes a finding of fact that must prevail unless no reasonable juror could have so concluded.

The majority errs in ignoring both the evidence that underlies these two jury findings, and also the clear import of District of Columbia law on causation and contributory negligence. Before addressing these two failings, I find it helpful to clarify the district court's discussion of *Firfer v. United States,* 208 F.2d 524 (D.C.Cir.1953), which controls District of Columbia law as to a landowner's liability to trespassers on her property.[1]

---

4. Plaintiffs also argue that the line of precedent relied upon by Judge Greene is inapposite. Brief for Appellants at 14–16. To be sure, those decisions involved child trespassers who were attempting to invoke the "attractive nuisance" exception to the general rule of landowner liability articulated in *Firfer.* Plaintiffs here, in contrast, had no need to invoke the "attractive nuisance" doctrine since the jury found Derek to be "lawfully on the land." *See* Brief for Appellants at 15 n. 5. But these differences are irrelevant to the issue before us. The cases clearly hold that a moving train is a danger so

obvious that children of a certain age are presumed to recognize the danger and appreciate the risk of drawing near. It would be odd indeed to hold that children recognize the danger of a moving train when trespassing on railroad property, but somehow become unaware of the risks when present on the property as a result of the railroad's acquiescence.

1. The majority agrees that *Firfer* still "represent[s] the law of the District of Columbia," *see* Majority Opinion at 658–59 n. 2, but explains

## I. Standard of Care

The *Firfer* decision determined the landowner's duty to a trespasser, not a licensee or invitee. *Firfer* held that a landowner is responsible only for intentional, wanton or willful injury to trespassers. Arguing that the District of Columbia no longer "clings to the *Firfer* rule," *see Foshee v. Consolidated Rail Corp.*, 661 F.Supp. 350, 353 (D.D.C.1987), the district court adopted for all categories of entrants the "reasonable care under the circumstances" test articulated in *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 100 (D.C.Cir.1972), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973). The *Arbaugh's* decision, however, came after the District of Columbia Court Reorganization Act of 1970, Pub.L. No. 91–358, replaced this court with the District of Columbia Court of Appeals as the ultimate arbiter of local law in the District. Though the District of Columbia Court of Appeals has stated that it is bound by pre-organization decisions by this court that have not been overturned by an *en banc* ruling by the District of Columbia Court of Appeals, *see M.A.P. v. Ryan*, 285 A.2d 310 (D.C.App.1971), the *Arbaugh's* decision itself came too late to fall within that category of absorbed cases. *See Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 597 (D.C.App.1981) (en banc) (*Arbaugh's* decision does not affect controlling status of *Firfer* as to common law of District); *see also Jeffries v. Potomac Development Corp.*, 822 F.2d 87, 94 (D.C.Cir.1987) (District of Columbia Court of Appeals adheres to *Firfer*).

Thus we agree that *Firfer* continues to apply to cases involving landowners' liability to trespassers under District of Columbia law. At the same time, however, the District of Columbia Court of Appeals has followed the modern trend towards a "reasonable under the circumstances" standard for invitee and licensee plaintiffs, that is, all persons not in the trespasser classification. *See Holland, supra; Blumenthal v. Cairo Hotel Corp.*, 256 A.2d 400 (D.C.App. 1969); *D.C. Transit System, Inc. v. Carney*, 254 A.2d 402 (D.C.App.1969).

Therefore, the district court draws too broad a conclusion when it asserts that "[t]he appropriate way to measure the duty of a landowner toward those on his land is to determine whether he exercised toward them reasonable care under the circumstances." 661 F.Supp. 350, 353 (D.D.C. 1987). This reasonableness standard applies when entrants are invitees or licensees; when courts determine that entrants are trespassers, however, a landowner is liable under the *Firfer* rule only for intentional, wanton or willful injury.[2]

The critical question in this case, therefore, is whether to classify Foshee as a trespasser or licensee. Appellee–Conrail points to considerable District of Columbia case law categorizing minors hit by passing trains as trespassers. *See, e.g., Luck v. Baltimore & Ohio Railroad Co.*, 510 F.2d 663 (D.C.Cir.1975); *Edwards v. Consolidated Rail Corp.*, 567 F.Supp. 1087 (D.D. C.1983), *aff'd*, 733 F.2d 966 (D.C.Cir.1984), *cert. denied*, 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984); *Alston v. Baltimore & Ohio Railroad Co.*, 433 F.Supp. 553 (D.D. C.1977); *Holland, supra. Firfer*'s intentional, willful or wanton standard, coupled

---

neither the qualifications that now limit *Firfer* nor how *Firfer* applies to this case.

**2.** A separate line of District of Columbia case law, adhering to Restatement (Second) of Torts § 339 (1965) (Artificial Conditions Highly Dangerous to Trespassing Children), has heightened the standard of care owed to child-trespassers under the legal fiction known as "attractive nuisance." *See, e.g., Edwards v. Consolidated Rail Corp.*, 567 F.Supp. 1087 (D.D.C.1983), *aff'd*, 733 F.2d 966 (D.C.Cir.1984), *cert. denied*, 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984). If the plaintiff-trespasser proves the particular elements of § 339, a landowner will be held to a reasonableness standard under § 339(e). In the

unique case of injury by moving train, however, the District of Columbia Court of Appeals has narrowed the doctrine of attractive nuisance to exclude, as a matter of law, plaintiffs like Foshee, who are over eight years of age. The court explained:

> [A]s a matter of law, element (c) of [§ 339] is not met since a moving train is a danger so obvious that any nine-year-old child allowed at large would readily discover it and realize the risk involved in coming within the are [sic] made dangerous to it.

*Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 603 (D.C.App.1981) (citations omitted).

with the District of Columbia's gloss on § 339's attractive nuisance doctrine, was applied in those cases to bar recovery against the railroad.[3]

An entrant's status is not a question of law, however. It is a factual issue for the jury. *See WMATA v. Ward,* 433 A.2d 1072, 1073 (D.C.App.1981). In this case, Foshee's jurors heard considerable evidence of longstanding daily passage across Benning Yard by both young people and adults in the neighborhood.[4] There was ample evidence on which the jury could have found that "appearances" would lead passerby reasonably to conclude that Conrail had impliedly consented to entry and use of the across-the-tracks route as a shortcut to Minnesota Avenue. *See Jeffries, supra* at 94 ("[A] plaintiff is considered a 'licensee by invitation,' rather than a 'bare licensee' or trespasser, if he is invited onto the defendant's land 'by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner (or occupant) had given his consent to the entry.' ").

Having found that Foshee was such a "licensee by invitation," Foshee's jury could then properly have held Conrail to a duty of exercising reasonable and ordinary care under the circumstances. Such a finding would in fact comport with the district court's instruction. Foshee charges that Conrail breached its duty through several acts of nonfeasance: too few posted warn-ings, failure to fence off the passage through Benning Yard, and failure to sponsor educational programs explaining the pedestrian hazard. Again, the jury had ample evidence to find that such omissions were unreasonable under the circumstances.[5] Not only had Conrail been fully aware of the risk of injury to pedestrians crossing Benning Yard for at least twenty years, but also Conrail's own safety director and corporate deponent Mike Mitchell testified that the failure to take precisely these affirmative measures was contrary to Conrail's policy. The jury also heard John C. Buckingham, the Executive Director, Safety and Operating Rules, for the Association of American Railroads, testify that this failure was contrary to the custom and practice of the railroad industry. Disregard of its own policy as well as the practice of the industry to reduce the risk of injuries and fatalities at locations where known, continuous, and longstanding pedestrian passage occurs, is sufficient evidence for a negligence finding against a railroad. *See Sledd v. Washington Metropolitan Area Transit Authority,* 439 A.2d 464 (D.C.App.1981).

## II. PROXIMATE CAUSE

There is no real question then that the jury could properly have found that Conrail breached its duty to maintain reasonably safe premises. The district court none-

---

3. This court's earlier ruling in *Luck,* favorable to the plaintiff, was harmonized with the subsequent adverse § 339 findings on the grounds that evidence of active negligence (lookout failure) was offered in *Luck* and that the plaintiff was only six years old. *See Alston v. Baltimore & Ohio Railroad Co.,* 433 F.Supp. 553, 566–67 nn. 84, 85 (D.D.C.1977).

4. Uncontradicted testimony before the district court established that Conrail has been fully aware for more than thirty years that the residential community of River Terrace, schoolchildren and adults, have on a daily basis crossed the Benning Yard tracks to gain access to the commercial and transportation facilities of Minnesota Avenue. In fact, members of Conrail's security patrol situated in the Yard admitted to being "alarmed" over the last twenty years by the heavy pedestrian traffic across the tracks.

5. Although this case is factually dissimilar from previous rulings under District of Columbia law where Restatement (Second) of Torts § 339 was found unavailing to child-trespassers, those decisions are instructive as to § 339(e)'s reasonableness inquiry. Most recently, in *Edwards v. Consolidated Rail Corp.,* 567 F.Supp. 1087 (D.D.C.1983), the district court emphasized that because neither federal nor District of Columbia law requires fencing, the lack thereof would not amount to unreasonable conduct as long as the defendant railroad "had no reason to suspect that ... [the] particular location was any more likely to have a[n] ... accident occur than any other used by through trains along its lines." *Id.* at 1112. The Court thus clearly implied that a contrary finding of unreasonable conduct would result in circumstances similar to those in Benning Yard, where because "injurious conduct [is] more likely and foreseeable," the railroad had a duty to install fencing or to take other affirmative precautions. *Id.*

theless directed a judgment n.o.v. on the ground that Conrail's violations of its duty of care were not shown to be the proximate cause of Foshee's accident. *See Foshee v. Consolidated Rail Corp.*, 661 F.Supp. 350 n. 14 (D.D.C.1987). In dictum, the majority endorses this district court position. *See* Majority Opinion at 658 n. 3. The error of this ruling becomes clear upon consideration of current District of Columbia law on proximate cause. Neither the district in its one-sentence reversal of the jury on proximate cause, not the majority today, makes any reference at all to this body of law. Under it, proximate cause is, except in extremely rare circumstances not here apparent, a question of fact for the jury and the jury is not to be second-guessed unless there are absolutely no facts or circumstances to support its conclusion. *See Murphy v. United States*, 653 F.2d 637, 650 (D.C.Cir.1981) (where proper conduct by defendant would have prevented injury, jury should be allowed wide deference in its conclusion on proximate cause); *District of Columbia v. Freeman*, 477 A.2d 713, 716 (D.C.App.1984); *cf. McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256 (D.C.App.1983) (where proximate cause cannot be established by direct proof, jury may infer that negligent condition was responsible unless "absolutely no facts or circumstances" support this conclusion). District of Columbia law further defines the legal standard for the jury finding as whether the plaintiff has offered proof that it is "more likely than not that the conduct of the defendant[] was a substantial factor" in causing the injury. *Lacy v. District of Columbia*, 424 A.2d 317, 318 (D.C. App.1980) (emphasis added); *see also Freeman, supra*, 477 A.2d at 716 (citations omitted) ("[p]roximate cause encompasses both foreseeability of injury, and the decision that liability will not attach unless the breach of duty has a substantial and direct causal link to the plaintiff's injury"); *Morgan v. District of Columbia*, 449 A.2d

1102, *rehg. granted, vacated*, 452 A.2d 1197 (D.C.App.1982), on rehearing, 468 A.2d 1306 (D.C.App.1983) (under proximate cause analysis, actor is liable for harm foreseeably attributable to her conduct unless chain of events appears highly extraordinary in retrospect). The proximate cause doctrine, and especially the substantial factor test, aim primarily to protect negligent actors from liability where an intervening action, separate from the negligence, causes plaintiff's injury. *See Hicks v. United States*, 511 F.2d 407 (D.C.Cir. 1975). There is, however, absolutely no evidence that any such intervening event, subsequent to Foshee's entrance along the unimpeded route,[6] occurred in this case and in the absence of any such evidence, a reasonable juror could certainly have concluded that Conrail's failure to provide adequate warnings and to fence the Benning Yard would foreseeably lead to a pedestrian's being hit by a train. *See Ceco Corp. v. Coleman*, 441 A.2d 940, 944 (D.C.App. 1982) (alleged inadequate warning and failure to rope off construction site held to be acts from which jury could infer negligence that proximately caused plaintiff's injury); *cf. Spar v. Obwoya*, 369 A.2d 173, 178–79 (D.C.App.1977) (creating opportunity for tenant injury through inadequate protective measures guarding premises may be proximate cause of accident). District of Columbia precedent is unequivocal that evidence of inaction in the face of foreseeable danger to third parties to whom the actor owes a duty of care will suffice to meet the proximate cause requirement. *See, e.g., Graves v. United States*, 517 F.Supp. 95, 97–98 (D.D.C.1981); *Hankins v. Southern Foundation Corp.*, 216 F.Supp. 554 (D.D. C.1963), *aff'd.*, 326 F.2d 693 (D.C.Cir.1963). Thus I find incredible on this record the majority's suggestion that no reasonable juror could find that Conrail's breach of its duty to ensure safe premises was *a substantial factor* leading to Foshee's injury.

**6.** One clear example of an intervening event would be a deliberate effort to "train hop." Thus, in *Alston v. Baltimore & Ohio Railroad Co.*, 433 F.Supp. 553 (D.D.C.1977), the district court wrote that in light of the uncontroverted evidence of plaintiff's attempts to climb aboard defendant's train "it seriously doubts that such measures [fencing, warning signs] would have been capable of restraining Wyron Alston from 'hopping' defendant's trains when he was of a mind to do so." *Id.* at 557–58 n. 17.

## III. CONTRIBUTORY NEGLIGENCE

The majority's primary ground for sustaining the reversal of the jury verdict, Foshee's alleged contributory negligence, also conflicts with local District of Columbia precedent. The District of Columbia Court of Appeals has repeatedly held that contributory negligence is a question of fact for the jury. *See Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.App. 1979); *see also Jeffries, supra,* at 91. The Court of Appeals in *Stevens v. Hall,* 391 A.2d 792 (D.C.App.1978), reversed a trial court's summary judgment in favor of a defendant in a negligence action for injuries sustained by a fourteen-year-old, holding that the question of a youth's contributory negligence is for the jury, not the court. *See generally Herrell v. Pimsler,* 307 F.Supp. 1166 (D.D.C.1969) (District of Columbia standard of care to determine child's contributory negligence is that of "reasonable child" of like age and background). *Cf. American Nat'l Bank & Trust Co. v. Pennsylvania R. Co.,* 35 Ill.2d 145 (1966), 219 N.E.2d 529 (rejecting argument that 13-year-old child injured while falling from freight train was guilty of contributory negligence as matter of law). Absolutely no extraordinary circumstances exist here to take this case out of the general rule; in fact, the jury issued a separate verdict on the specific issue, finding that the railroad had *not* proven *its* case that Foshee was contributorily negligent. *See* App. at 30. That verdict, moreover, is supported by the record which contains no evidence at all of any contributorily negligent action by Foshee: none of Foshee's friends saw the accident; Foshee's injuries caused him to lose all recollection of the calamity; no evidence was offered as to a proclivity to "train hop"—indeed, Foshee had never before played in Benning Yard; and there was evidence by the railroad's own safety expert that the

onrush of a freight train can cause dizziness and distortions that might lead to a fall.[7] Perhaps most important, the majority mistakenly leaps from its implied insufficient finding of proximate cause (plaintiff's burden) to its conclusion as to contributory negligence. Elementary tort law, however, instructs us that the defendant carries the burden of proof to prove contributory negligence. Defendant–Conrail offers not a scintilla of such evidence—a failing the majority itself admits. *See* Majority Opinion at 657 (quoting district opinion, *Foshee v. Consolidated Rail Corp.,* 661 F.Supp. 350, 353 (D.D.C.1987)). So again, I am baffled by the majority's argument.

Also, I am unpersuaded by the majority that contributory negligence can be removed altogether from jury determination in cases of train accidents involving youths over eight years old. The district court relies on the rule in *Holland v. Baltimore & Ohio R.R. Co.,* 431 A.2d 597 (D.C.App. 1981), and its progeny, that a minor over eight years of age, who is injured by a moving train, cannot, as a matter of law, bring an *attractive nuisance* claim against a railroad company. The district court implies that this decisional law not only bars trespassers' attractive nuisance claims, but also supplies to railroad companies, as a matter of law, the absolute defense of contributory negligence against all entrants over eight years of age. Such a holding would of course mean that *any* such child (even an invitee), who is injured by a moving train, would always (except in last clear chance situations) be barred by law from recovery, regardless of the railroad's fault. I do not believe the District of Columbia courts have yet adopted any such radical enlargement of their narrow rule restricting the availability of "attractive nuisance" recovery. *Cf.* Restatement, Torts 2d § 339, Comment (c) (agreeing with "great

---

**7.** The district court's suggestion that the doctrine of assumption of risk would bar recovery from Conrail, *see Foshee v. Consolidated Rail Corp.,* 661 F.Supp. 350 n. 17 (D.D.C.1977), is also mistaken. The District of Columbia requires proof of actual knowledge of a risk by the plaintiff, not merely a reasonable person test, for assumption of risk to apply. *See Sinai v.*

*Polinger Co.,* 498 A.2d 520, 526–27 n. 10 (D.C. App.1985). No evidence was offered as to Foshee's actual knowledge of the hazard he faced. Needless to say, the jury was uniquely situated to consider Foshee's intellect, experience, maturity and capacity—all important factors (beyond mere age) in a contributory negligence finding.

majority of the courts [that] have rejected any such fixed age limit" to attractive nuisance doctrine; noting also that fixed age limits were complementary to—not conclusive as to—presumed capacity of elder children for contributory negligence).[8]

This court should be more hesitant in forecasting such a sweeping modification in District of Columbia law.[9] Wholesale importation of a narrow court-made exception to the attractive nuisance doctrine, which is itself an exception to the prevailing legal doctrines concerning duties of case owed to trespassers, effectively will result in reversal of the longstanding and deep-rooted policy of tort law that requires defendants to prove contributory negligence. That is a radical change in local law indeed, not casually to be instituted by a prognosticating federal court. The departure from express prior law assigning the contributory negligence inquiry to the jury is unexplained here, *see Herrell v. Pimsler*, 307 F.Supp. 1166, 1171 (D.D.C.1969) (recognizing "the practical impossibility of setting down a strict standard of care for minors of varying age, judgment, and intelligence," and endorsing "the well established principle that a jury should decide the capabilities of the minor from the evidence in the case"); still more extraordinary, the majority, with terse reference to the separate doctrine of attractive nuisance, establishes the virtually unprecedented notion of a nonrebuttable rule of child contributory negligence.[10] Hereafter it seems, District of Columbia children over eight years old, regardless of intellect and experience, regardless even of train operators' negligence, will not recover for injuries inflicted when they are hit by trains, at least in federal court.

## CONCLUSION

Viewing the evidence in the light most favorable to Foshee, reasonable jurors could well have found that Conrail had a duty to provide reasonable care to the entrants from River Terrace, that Conrail failed to provide such care, that this breach of duty proximately caused Foshee's accident, and that Conrail made no showing of Foshee's contributory negligence. I therefore believe the district court's judgment n.o.v. was without support in the record, and respectfully dissent.

**8.** Just as evidence of knowledge of a hazard may permit an assumption of risk defense, so too the District of Columbia's fixed age limit restricts an attractive nuisance recovery. These two findings involve plaintiff's mental state. Contributory negligence is dissimilar, barring recovery for injuries negligently inflicted by one person on another if the injured person proximately contributed to her own injury. The focus is on plaintiff's conduct. *See Weber v. Eaton*, 160 F.2d 577 (D.C.Cir.1947) (contributory negligence turns on conduct; assumed risk doctrine, on mental state of willingness). As with incompetent adults, mere knowledge of a peril does not suffice to prove contributory negligence. Plaintiff must act, and that action must proximately contribute to her injury. As noted above, defendant Conrail offered no evidence of a contributory act made by Foshee. Also dissimilar from assumption of risk or the fixed age limit to attractive nuisance, contributory negligence doctrine assumes an inquiry into the age, intelligence, experience, judgment and discretion of a child to determine whether her conduct was below that of an ordinary person of like age, intelligence and experience. The jury made this inquiry, and, responding to a special

interrogatory, declared Foshee not contributorily negligent.

**9.** In fact, District of Columbia case law indicates that the courts have assiduously avoided extending the related doctrine of *per se* negligence to minors. Referring to *Herrell v. Pimsler*, 307 F.Supp. 1166 (D.D.C.1969), *supra*, the *District of Columbia Court of Appeals in Stevens v. Hall*, 391 A.2d 792 (D.C.App.1978), *supra*, emphasized that *per se* negligence rules applied to children are inconsistent with the District of Columbia courts' view that "'the question of whether a child of tender years has exercised such care as would reasonably be expected from a person of his age and capacity is a question for the jury, and to be determined by the circumstances of the particular case.'" *Id.* at 796 (citing cases).

**10.** *Cf.* 77 A.L.R.2d 917, 920 (noting that shift to factual jury determinations as to child contributory negligence competes with widespread case law asserting conclusive, or at least *prima facie*, presumptions, *against* capacity for contributory negligence as to children in seven to fourteen age group).